UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS ANTONIO PILACA CELESTINO,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, Secretary of the United States Department of Homeland Security, *et al*.,<br><br>Respondents. | Case No.  1:26-cv-03579   (AMO)<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. No. 1, |

This habeas action concerns the detention of Petitioner Marcus Antonio Pilaca Celestino ("Petitioner"), a noncitizen who has lived in the United States for over five years. Based on the Government's new interpretation of 8 U.S.C. § 1225(b)(2)(A) as mandating detention for all noncitizens present in the United States without admission, Petitioner is being detained without the opportunity for a bond hearing. This matter is before the Court on Petitioner's writ of habeas corpus. For the reasons explained below, the Court GRANTS Petitioner's writ of habeas corpus.

## I.   BACKGROUND

Petitioner is a citizen of Peru who entered the United States on April 1, 2023. Dkt. 1 ¶ 1. Upon entry, he was "arrested and placed in removal proceedings" by the United States Department of Homeland Security ("DHS"). Dkt. 6-1. On April 2, 2023, DHS released Petitioner on his own recognizance "in accordance with section 236 of the Immigration and Nationality Act[.]" *Id*. Since his release over three years ago, Petitioner filed for asylum, was issued a valid Employment Authorization Document, and began working as an Uber driver to support his family, including his minor child who has been diagnosed with autism. Dkt. 1 ¶¶ 45-6, 51. Petitioner also notes that he has no criminal history. *Id*. ¶ 49.

On May 8, 2026, Petitioner filed a petition for writ of habeas corpus, arguing that his detention violates 8 U.S.C. § 1226(a), the Due Process Clause of the Fifth Amendment, and the Administrative Procedure Act ("APA"). *Id*. ¶¶ 52–61. In Respondents' two-page response, they do not allege that Petitioner has a criminal record in the United States or elsewhere. *See* Dkt. 5. Instead, the Government relies entirely on its new interpretation of 8 U.S.C.§ 1225(b)(1)(A) ("Section 1225") as mandating Petitioner's detention, a position Petitioner disputes in his reply. *See id*. at 1; Dkt. 6 ¶ 5.

## II.     LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.     DISCUSSION

Petitioner asserts three claims for relief, including that his continued detention violates his procedural due process rights under the fifth amendment (count 3), that his continued detention without a bond hearing violates 8 U.S.C. § 1226(a) ("Section 1226") (count 1), and that Respondents' actions violate the APA (count 2). Because Petitioner's procedural due process claim affords Petitioner all the relief to which he is entitled—namely, release and a pre-deprivation hearing prior to re-detention—the Court need not and does not reach Petitioner's remaining two claims.

United States District Court
Eastern District of California

2

**A.     Petitioner is Not Subject to Mandatory Detention Under 8 U.S.C. § 1225(b)(1)(A)**

Before turning to Petitioner's due process claim, the Court addresses whether 8 U.S.C. § 1225(b)(1)(A) applies to Petitioner as Respondents contend. Dkt. 5 at 1. This Court agrees with the multitude of courts that have concluded that applying Section 1225 to non-citizens like Petitioner "(1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, 801 F.Supp.3d 1104, 1112 (E.D. Cal. Sept. 23, 2025) (citing cases).

As to the text, Section 1225(b)(2)(A) applies to an applicant "seeking admission" to the United States, whereas Section 1226(a) applies to individuals who have been arrested "on a warrant issued by the Attorney General." 8 U.S.C. §§ 1225(b)(2)(A), 1226(a). "Seeking," as noted by other courts, "means 'asking for' or 'trying to acquire or gain.'" *Lepe*, 801 F.Supp.3d at 1113 (citing Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/seeking). And the term "admission" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). "To piece this together, the phrase seeking admission means that one must be actively seeking lawful entry" to, as opposed to seeking *to remain in*, the United States as Petitioner is doing here. *Lepe*, 801 F.Supp.3d at 1113 (internal quotations omitted). In contrast, 1225(a)(1) explains that "[a noncitizen] present in the United States who has not been admitted or who arrives in the United States ... shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). However, if Section 1225 was intended to apply to all applicants for admission—as Respondents contend—"there would be no need to include the phrase 'seeking admission' in the statute." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 487 (S.D.N.Y. 2025).

Respondents' interpretation also ignores the statutory scheme. As the Supreme Court noted in *Jennings*, Section 1225 applies "at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). But Section 1226 is the "default rule" for "the process of arresting and detaining" aliens who are already "inside the United States[]" and "authorizes the

Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Id.* at 288–89 (emphasis added).

Here, Petitioner is not seeking admission to the United States. He has been living in the United States continuously since 2023 and was not recently arrested at the border or a port of entry where he was subject to inspection. Instead, he was arrested in the interior of the United States while working as an Uber driver. Dkt. 1 ¶ 4.

Further, as many courts have already noted, construing Section 1225 to apply to all non-citizens who have not been admitted would render certain portions of Section 1226 superfluous, notably a recent amendment to the statute. Congress recently adopted the Laken Riley Act, adding Section 1226(c)(1)(E), which mandates detention for additional categories of criminal aliens. "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1259 (W.D. Wash. 2025) (quoting *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995), abrogated on other grounds by *Riley v. Bondi*, 606 U.S. 259, 261 (2025)). If all non-citizens arrested while already in this country are subject to mandatory detention under Section 1225, there would be no need to include this exception. *See Rosado v. Figueroa*, No. CV 25-2157-DHX-DLR (CDB), 2025 WL 2337099, at *9 (D. Ariz. Aug. 11, 2025) (if Section 1225's "mandatory detention provisions apply to all noncitizens present in the United States who have not been admitted, it would render superfluous provisions of § 1226 that apply to certain categories of inadmissible noncitizens"); *Rodriguez*, 779 F. Supp. 3d at 1258 (noting that if the court were to adopt a reading of Section 1225 advanced by the BIA, it would render significant portions of Section 1226(c) meaningless).

In addition, "the longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is." *Rosado*, 2025 WL 2337099, at *10 (citation modified) (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024)). "Until this year, DHS has applied section 1226(a) and its regime of discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation—a practice codified by regulation." *Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 929 (N.D. Cal. Sept. 26, 2025) (citation modified). The longstanding practice of DHS

applying Section 1226, rather than Section 1225, to those arrested in the interior of the United States supports the finding that this practice was the best reading of the statute. As such, the Court concludes that Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(A).

### B.    Petitioner's Re-Detention Violated His Due Process Rights

The Court next turns to Petitioner's due process claim. Petitioner's constitutional challenge is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (*citing Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

### 1.    Liberty Interest

Petitioner contends that his release from immigration custody by the affirmative act of the Government pursuant to 8 U.S.C. § 1226 on April 2, 2023, and then the three years of freedom that followed, gave rise to a protected liberty interest. *See* Dkt. 6-1. The Court agrees.

The regulations that authorize immigration authorities to release a noncitizen on his own recognizance require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). "Thus, DHS may generally not re-arrest a previously released noncitizen absent a change in circumstances." *Singh*, 2026 WL 468159, at * 2 (internal quotation omitted).

The record before the Court indicates that immigration authorities determined that Petitioner was neither a flight risk nor dangerous when they chose to release him into the United States over three years ago. Petitioner's "Order of Release on Recognizance" filed with his reply indicates that he was  "released on [his] own recognizance" "[i]n accordance with section 236 of the Immigration and Nationality Act[,]" and Respondents have raised no facts to the contrary. Dkt.

6-1; *see Singh v. Bondi*, No. 1:26-CV-0396 DC CSK P, 2026 WL 469169, at *3 n.4 (E.D. Cal. Feb. 19, 2026) ("Section 236 of the INA is codified at 8 U.S.C. § 1226"). Since then, Petitioner has developed ties in the community—he obtained work authorization, timely applied for asylum, and financially supports his family. Dkt. 1 ¶¶ 45–51. Further, Petitioner maintains that he has a clean criminal record. Dkt. 1 ¶ 49. Respondents do not rebut any of these facts, and have raised no new facts indicating that there is a change in circumstances warranting re-detainment.

As such, the Government's election to "release Petitioner under § 1226(a) provided Petitioner with a liberty interest that is protected by the Due Process Clause." *Oliveros v. Kaiser*, No. 25-CV-07117-BLF, 2026 WL 1162724, at *4 (N.D. Cal. Apr. 29, 2026); *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [the noncitizen] have a liberty interest in remaining out of custody on bond."); *Pinchi v. Noem*, 792 F.Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."); *He v. Lyons*, No. 25-cv-10639-JSC, 2026 WL 280074, at *3 (N.D. Cal. Feb. 3, 2026) ("Courts throughout the Ninth Circuit have concluded individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond."); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest). Because Petitioner was released from DHS custody on his own recognizance in 2023, he maintains a protected liberty interest in remaining out of custody.

### 2.    Due Process

Many courts have applied the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due in the immigration context. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). There are three factors relevant to the due process

6

inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first *Mathews* factor, the Court finds that Petitioner has a substantial private interest in remaining out of immigration custody because he has been released pending civil removal proceedings for the past three years. Since then, he has obtained work authorization and financially supports his family. "[His] detention denies [him] that freedom." *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1111 (E.D. Cal. 2025).

Turning to the second factor, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla v. U.S. Immigr. & Customs Env't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023); *Sharan S. v. Chestnut*, No. 1:25-CV-01427-KES-SKO (HC), 2025 WL 3167826 (E.D. Cal. Nov. 12, 2025) ("Under section 1226(a), petitioner would be entitled to a bond hearing, and any custody redetermination would have to be based on whether petitioner is 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk.'") (quoting *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). The record before the Court indicates that Petitioner has no criminal history and has complied with all terms of his release. Respondents do not raise any facts to the contrary in opposition. As there have been no procedural safeguards to determine if Petitioner's re-detention is justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

The final *Mathews* factor also weighs in Petitioner's favor. Although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining Petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v.*

*Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 2025 WL 691664, at *6. "If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970.

## IV.    CONCLUSION AND ORDER

For the reasons stated above, the Petition is GRANTED. IT IS HEREBY ORDERED that:

1.    Respondents immediately release Petitioner Marcus Antonio Pillaca Celestino (A246-759-773) from their custody.

2.    Respondents shall not impose any additional restrictions on Petitioner, unless they are determined to be necessary at a future pre-deprivation and/or custody hearing.

3.    If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which Petitioner's eligibility for bond must be considered. This Order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal.

4.    The Clerk of the Court is directed to close this case and enter judgment for Petitioner.

**IT IS SO ORDERED.**

Dated: May 20, 2026

_____
ARACELI MARTÍNEZ-OLGUÍN
United States District Judge

United States District Court
Eastern District of California

8